**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Apr 08 2013, 10:50 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DONALD J. BERGER**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THEODORE FUENTES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1207-CR-328 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause Nos. 71D02-1105-FD-356 & 71D02-1006-FB-81

**April 8, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Theodore L. Fuentes appeals his conviction for Class D felony residential entry. He contends that the evidence is insufficient to sustain his conviction. Finding the evidence sufficient, we affirm.

**Facts and Procedural History**

On May 9, 2011, seventy-nine-year-old Robert Hertel[1] lived with his dog Buddy on Parker Drive in South Bend, Indiana. Fuentes and his mother lived directly across the street from Robert, and Kimberly Ann lived next door to Robert. Just before 1:00 p.m., Robert left his house to go to his volunteer job at Healthwin, just as he did every weekday. Robert closed the back door but did not lock it because there was a problem with the lock. When Robert left, Kim was in her yard planting flowers, and Fuentes was walking across his front lawn toward his house. Robert waved at both Kim and Fuentes.

Kim saw Robert leaving, returned his wave, and continued planting flowers with her back toward Robert's house. A few minutes later, Kim sensed something passing behind her. Thinking it was her dog, she walked in between her and Robert's house, at which point she noticed Fuentes walking through Robert's gate and into his backyard. Kim thought this was strange because both she and Fuentes had seen Robert leave just a few minutes earlier. Kim went to her backyard to see if she could see Fuentes. Kim could not see Fuentes in Robert's backyard but decided to watch Robert's glass patio door. After about fifteen minutes, Kim saw Fuentes inside Robert's house walking past the patio door. Fuentes saw Kim watching him and backed away from the patio door.

---

[1] Robert was seventy-nine-years old at the time of trial in April 2012, so he could have been seventy-eight at this time.

Kim waited for Fuentes to come outside, but he did not. Instead, several minutes later, Fuentes let out Robert's dog, Buddy. Kim continued to wait for Fuentes to come out, but he did not. So, Kim went to her shed and pretended to be busy. At that point, Fuentes walked through Robert's backyard, exited the gate, and walked across the street to his own house. Within a minute, though, Fuentes returned to the back of Robert's house, let Buddy back in Robert's house, and went back to his own house.

Kim did not call the police but instead waited for Robert to get home because she knew that he would be home soon. When Robert got home, Kim told him about what she had observed. Robert then looked through his home and discovered that some coin folders were missing from the table where he had last put them. In addition, Robert had not given Fuentes permission to be in his house and had no arrangement with him to let his dog out. Robert called the police.

South Bend Police Department Officers Kevin Mangels and David Fazio responded to the call. After talking with Robert and Kim, the officers went to Fuentes' house across the street and asked Fuentes if he had been in Robert's house earlier that day. Fuentes said, "Yes." Tr. p. 130. The officers then asked Fuentes if he had permission to be in Robert's house, and he said, "No." *Id.* As Officer Mangels asked Fuentes to turn around so that he could be handcuffed, Fuentes said that he let the dog out all the time. *Id.* at 139, 140.

The State charged Fuentes with Class D felony residential entry and Class D felony theft. The State also filed a petition to revoke Fuentes' probation in another cause number.

3

While in jail awaiting trial, Fuentes made a phone call to his mother and told her to tell Robert that the coin folders were in a box next to his chair in the living room. *Id.* at 158; State's Ex. 1. The next day, Fuentes' mother went to Robert's house and told him to look in the box next to his chair. When Robert looked there, he discovered the empty coin folders and an envelope containing the coins.

Fuentes' mother later testified at trial that Robert had never given Fuentes, or anyone else in their family for that matter, permission to be in his house, but they went in his house anyway to take care of the dog. Tr. p. 201-04.

A jury trial was held on the Class D felony charges in April 2012. Fuentes moved for judgment on the evidence as to the theft charge, which the trial court granted. The jury found Fuentes guilty of Class D felony residential entry. The trial court sentenced Fuentes to two years in the Department of Correction "as a direct commitment to DuComb, at their level of supervision." Appellant's App. p. 11, 13. The trial court ordered this sentence to be served consecutive to Fuentes' three-year sentence for violating his probation.

Fuentes now appeals.

**Discussion and Decision**

Fuentes contends that the evidence is insufficient to sustain his conviction for Class D felony residential entry. When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in

4

a light most favorable to the conviction. *Id.* "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.*

In order to convict Fuentes of residential entry as charged in this case, the State had to prove that Fuentes knowingly broke and entered Robert's residence. Ind. Code § 35-43-2-1.5; Appellant's App. p. 153. Fuentes' sole argument on appeal is that his entry was not "unauthorized."[2] Appellant's Br. p. 6. He claims that three years ago when Robert was hospitalized, he took care of Robert's dog and last year he mowed Robert's grass. Fuentes' argument, however, is merely a request to reweigh the evidence.

The evidence most favorable to the verdict establishes that Fuentes admitted to the police that he was in Robert's house on the day in question and that he did not have permission to be in Robert's house. Fuentes' mother testified at trial that no one in their family had permission to be in Robert's house, yet they still would let Robert's dog out. Robert testified at trial that he did not give Fuentes permission to be in his house and that he did not have any arrangement with Fuentes to take care of his dog. Robert also testified that when he was in the hospital three years earlier, his son—not Fuentes—took care of his dog. And since that time, Robert took care of his own dog. The jury heard all of this testimony, weighed it, and found Fuentes guilty of residential entry. We will not

---

[2] Notably, Fuentes does not argue that he had consent to enter. In fact, the word "consent" is not mentioned once in his Appellant's Brief. Because lack of consent is not an element of residential entry that the State is required to prove, it is the defendant who must claim and prove the defense of consent. *See Holman v. State*, 816 N.E.2d 78, 81 (Ind. Ct. App. 2004), *trans. denied*. Even if Fuentes had raised the defense of consent, we would find that his belief that he had permission to enter was not reasonable and therefore he could not avail himself of the defense of consent.

second guess the jury's decision. The evidence is sufficient to support Fuentes' conviction for Class D felony residential entry.

Affirmed.

KIRSCH, J., and PYLE, J., concur.